Good morning, Your Honor. My name is Steve Luan, and in this case, I'm representing the petitioner, Jian Miao, last name M-I-A-O. Thank you, I was having difficulty pronouncing it. I'm pretty much sure the court is familiar with the facts, which is very simple. Yeah, so I think you're correct that we are. Let me ask you what I think is the hard question in this case. This circuit has two published opinions, and I will mispronounce the names. One is G-U, the other is G-U-O, dealing with similar situations. Tell me how you use those precedents in this case, and how you think they help you. So basically, the relief is based on three points. One is my client failed to obtain corroborative documents from China. I'm not very familiar with the two cases that the court mentioned. Well, I think, see, I'm not sure this is a case where the BIA or the IJ found your client not credible. What they said was, I think, maybe I'm wrong. This set of facts, even if believed, do not amount to the kind of persecution that gives rise to asylum. Do you agree? I disagree. You think that they found your client... Do you think they said if these facts were true, they would constitute persecution? Let's look at the past persecution. Right, the past persecution. Okay. We're not talking now about fear of future persecution. This court, they absence of corroboration, it doesn't matter if they say we find you credible, but even if everything you're saying is true, this set of facts doesn't amount to persecution. This court has decided so many cases, okay. The fact is that my client was a Christian, and at a meeting, she was arrested, detained by Chinese police, and interrogated, and kept for four days, and got released. We accept all that. I accept that all that is true, because the BIA accepted all that is true. So tell me why that amounts to persecution under the asylum statute. The case is saying detention is persecution. Arrest is persecution, and discharge from the main employment, which is support my client's livelihood, that is persecution. So how do you deal with the GU case? I see you said you weren't familiar with it. I'm not very familiar. We have a published opinion in which the Christian arrested at a house church was detained, I think for a substantial period of time, and subjected to, I think, more difficult physical abuse than your client was, and our court said that didn't amount to persecution under the statute. I tend to agree with you in colloquial terms, all those things are persecution, but I'm having difficulty dealing with that case. Okay, either it is inconsistent with the court decision, or I mainly rely on the Zao case and the Zou versus Gonzalez, which is this case, which is decided by this court. I think I don't have to give you the citation. No, no, we have the cases. Yeah, but you know, this case is even more extreme. The petitioner was a Chinese young woman, went to Singapore, and brought some documents regarding Falun Gong back to China, okay, then gave to her, I believe, co-workers. Then by the time the police was looking for her, tried to arrest her, she's already in the U.S. and applied for asylum, and this court decided, okay, that threat, okay, so first of all, past persecution, okay, she was detained, arrested, and discharged from work. I think this is in the strength of the... You think that as a matter of law, those three things establish past persecution, so that the BIA, if it found to the contrary, would have been acting contrary to law. Okay. Is that your position? Yes, I think, you know, the Zao case and the Zou case, you know, in those cases, the past persecution almost does not exist, because the petitioner never met face-to-face to the police, never be physically detained, arrested, or abused, or mistreated. But, you know, I think, you know, those strength of case designed by this jurisdiction, you know, support my argument. But, you know, I think, you know, in this case... And when you say, is it Zao versus Keisler you're relying on? I'm sorry? Zao versus Keisler, is that the case you're relying on? Correct. In that case, the petitioner was burned with cigarettes, while beaten by police, and the police burned his hands and feet with cigarettes. And what I'm trying to get you to respond to is, we have some cases that say even being detained is not enough, and we have some cases that say being detained plus pretty bad physical abuse is. And so I'm trying to figure out where your case falls on that continuum. Your Honor, I believe, maybe I'm ignorant about... No, you're certainly not. I think this Court has some inconsistency in deciding, you know... Perhaps. Perhaps. Okay, but I'm relying on Zao and Zou cases. Both are Chinese cases. Okay, I think this is even more prone or close to our situation. But, you know, I just want to emphasize, okay, in this jurisdiction, there's a rule. If the respondent can prove there's 10% of risk, objectively, subjectively, he or she will be persecuted back to the home country. This Court or the lower court can't give the relief. Right, so now you're talking about the reasonable fear of future persecution. Correct. What do you do with the country report, which the BIA seems to have relied on? The BIA, I think, selectively choose a certain part of the report. The report, the main... Okay, the Chinese country report from a long time ago to this point, always said Chinese police arbitrarily exercise their power to arrest people. There's no criminal procedure for any arrestee or detainee to prove they're innocent. Okay, so and particularly... Yeah, it is true. Under that test, everyone in China would be entitled to come to this asylum in this country. I thought your focus was on persecution of Christians. I think, you know, subjectively, objectively, there's difference. A lot of people, they're getting so rich in China and they're getting so powerful. They come here and do some sightseeing and go back. They think, you know, this country even it's not as rich as lecturers as their own home. But, you know, the clients like, the people like my client, they're small people. They were the victim of the system and they just want to practice their religious. Here is the Christian faith freely without, you know, the interference of the government. And particularly in this case, I believe the past persecution, the past experience of arrests, the detention and discharge from employment shows there's a way beyond 10% of the risk, subjectively or objectively, for her to go back and encounter persecution again. Did you want to save some time for a rebuttal? Yes,  Thank you, Your Honor. Mr. Bailon. Good morning. May it please the Court, Jeremy Bailon on behalf of the Attorney General. To jump right into your question, Your Honor, about, again, I will call them goo and gal. The two cases on the spectrum when we're trying to find that line between harassment and persecution. So what we have in you, I believe, where this court upheld the board's finding of no persecution is more serious physical abuse than what was suffered here. What about job loss? So I agree that you have job loss here, and that is also consistent with what spectrum of goo, as I will explain. Because in goo, you have more extreme physical harm. You have a longer interrogation. So in goo, you have a two hour interrogation. Here we have a 20 minute interrogation. And then about the physical harm described here is not particularly severe by the petitioner. And in goo, it's much more severe. That's right, Your Honor. In goo, you have. He's beaten with a rod at least 10 times. There's marks on the body. There's pain here. By her own testimony, the harm was not severe. What do we do? I'm sympathetic to counsel's argument that our case law is less than consistent in this area. Um, what do you do with the cases he cited? And I think, to be fair to opposing counsel, he was relying on Zalvi Gonzalez, I think, is his primary case. Now, Zalvi is for Zal versus Keisler. Um, both of those. But I think Zalvi Gonzalez is probably the better case for him. And I give some, what probably are diametrically opposed opinions in to Meng and Navarney. And so I think what we do is we apply the deferential standard of review to the agency's decision and look at what their agency did, which was reasonable in looking at goo and gow and trying to figure out where that line is. And I think that they did a reasonable job in trying to figure out where that line is. On the job loss. So I take it you agree that in footnote three in your brief that that Zhu versus Gonzalez supports this position? I do, Your Honor. But I think it's I think that case is an aberration when you look at the rest of the case law. And I don't think it's consistent with with goo or gow because goo you have serious. I mean, you have like 10 10. You have physical abuse with 10 hits with the rod. You have a three day detention. You have him reporting to the police. And that's in the court agree with the board that that wasn't persecution. I don't know how you square that was out. And I think under the deferential standard review, the agency reasonably looked at goo and gow and tried to figure out where where that so can an agency. Let's assume the agency reaches different conclusions in identical cases. Is is that something we should be concerned about? And just because if we're reaching different conclusions in similar cases, is that something we should be concerned about? I mean, I think if those two cases present themselves, that would be an difficult area. And I think the best we can do is try to look and go and go and see which fault side of the line it falls on. I think it falls on you. Like, look, we have job loss, which you don't have in goo. But it's also here we have less severe physical harm. We have a shorter interrogation in gow. If you're familiar with the facts of that case, I mean, you have very significant physical abuse in that case. You know, you have a beating with both. Do you think both incidents are are remembering in gow? The court says both incidents independently would constitute persecution. So, uh, in my memory serves me correctly. There's in the first one, they push him to the ground. They kick him in the stomach and strike him in the face twice. And in the second iteration, they use an electrically charged baton. They time to a chair and beat him with a rod. I think that either of those are distinguishable from this case. And so I think that that's just much more severe physical abuse than what you're talking about here. And on the job loss point, right, we have job. We have being fired from a job here, which we don't have in goo, right? Although maybe that's balanced out by the fact that there's less physical harm. But if you look at the facts of gow, how do we review job loss? The standard is whether economic deprivation is so severe that it's a threat to life or freedom. Can we tell that from this record? We cannot. And I think that because this petitioner's burden to prove that she's a refugee, she fails on that point. And gow is actually the point that he went out and tried to find a job multiple times after he was fired and was unable to. And I think that's why it approaches this affecting life or freedom. In this case, the problem is right after she was fired, her parents hired a broker, or what we would call a smuggler, to bring her to the United States. So we actually just don't know. So she had no opportunity to try to find other employers? Well, she just didn't present any facts that that deprivation was that severe. Also, I mean, her parents apparently have some means of being able to pay that high bond, and then also being able right after that to afford the smuggler. So I just think the board was reasonable in the way they went around this case, about this case, and finding that this case falls more on the goo side than the gow side. Even if we haven't been reasonable, or at least consistent? I understand the board has a difficult job divining what our prior opinions mean, but... I mean, I think the court is... I think this court is mostly consistent. I think the bulk of the case law supports our position. I think, again, we have Zao out there, and I wanna be upfront with you about that, but I think that there's case law that prevents that, and that it's not consistent with the bulk, the body of this court's published precedent. I do wanna move on, unless you have further questions about past persecution, and talk about future persecution. So I think that the problem with the future persecution claim is two fold. First, putting subjective fear aside, to have an objective fear of future persecution, you have to show the specific and direct evidence. And I think the problem with the reports provided is they actually don't show that specific evidence for someone similarly situated to the petitioner for two reasons. One, it focuses on the persecution of church leaders, of elicit church leaders, and there's actually things in there about how they want to take members like the petitioner, and move them in to the government approved Protestant churches. And I guess this leads me to my second point, which is, this case is a little bit odd, because in most of these cases, the petitioners are unable or unwilling to attend those government sanctioned churches, whether it be because of religious belief or what have you. But here, there's actually no allegation in the record that she is unwilling, unable to attend the government sanctioned Protestant church. And so, if you look at the evidence that she submitted, those churches are on the rise, religious freedom in relation to them are on the rise, and from that, I just don't think that a well founded fear could be established, especially if you're applying a deferential standard of review in looking at it. If you don't have any further questions, I would ask that the court deny the petition for review. Thank you. Thank you. Counsel. Your Honor, this case, something bothers me. The IGA, it seems, went out, he saw her own way to find non-existing facts to go on to deny this case. He or she didn't even make a decision whether or not the testimony of the respondent is credible. It was the BIA made a decision. They believe petition testimony is credible. I think credibility in this kind of case is crucial because... But my difficulty, and I said this before, is that the BIA said, We're gonna treat your client's testimony as credible. So there's no reason to send it back to an IJ to find it as credible. The BIA says she's telling the truth, but these facts don't add up in our view to persecution. So it's that legal issue, not how the IJ screwed it up, that I think you ought to be focusing on. I totally agree with the court. And I have to admit, I read many cases and found there's inconsistency. And so I think it's up to the court in the future to make more decision to square those inconsistency. But with the existing case law, I think this court should grant my client's asylum application. Particularly, if we consider future fear of persecution, the threshold, the requirement is very low in this jurisdiction. If in other jurisdictions, I would say she probably would fail. But in this jurisdiction, as long as the court believe there's more than 10% of risk she will be persecuted when she goes back to China, I think we should grant this application. Thank you, counsel. I thank both counsel for their arguments in this case, and it will
judges: Graber, Hurwitz, Korman